IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LAC COURTE OREILLES BAND OF LAKE
SUPERIOR CHIPPEWA INDIANS, RED CLIFF
BAND OF LAKE SUPERIOR CHIPPEWA INDIANS;
SOKAOGON CHIPPEWA INDIAN COMMUNITY,
MOLE LAKE BAND OF WISCONSIN; ST. CROIX
CHIPPEWA INDIANS OF WISCONSIN; BAD
RIVER BAND OF THE LAKE SUPERIOR CHIPPEWA
INDIANS; and LAC DU FLAMBEAU BAND OF LAKE
SUPERIOR CHIPPEWA INDIANS,

                Plaintiffs,

v.                                                       Case No. 74-C-313-C

STATE OF WISCONSIN, WISCONSIN NATURAL
RESOURCES BOARD; CATHY STEPP;
KURT THIEDE; and TIM LAWHERN,

                Defendants.

---

NOTICE OF MOTION AND MOTION FOR PRELIMINARY AND PERMANENT
INJUNCTIVE RELIEF

---

PLEASE TAKE NOTICE that the plaintiffs Lac Courte Oreilles Band of Lake Superior Chippewa Indians, Red Cliff Band of Lake Superior Chippewa Indians, Sokaogon Chippewa Community of the Mole Lake Band of Wisconsin, St. Croix Chippewa Indians of Wisconsin, Bad River Band of Lake Superior Chippewa Indians, and Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribes"), hereby move this Court to issue an injunction restraining the defendants from enforcing Wis. Admin. Code § 13.30(1)(q) (incorporating Wis. Stat. § 29.312 by reference) against members of the Tribes in the courts of the State of Wisconsin.

As grounds for this motion, the Tribes state:

1

1. In *Lac Courte Oreilles Band of Indians v. Wisconsin*, 740 F.Supp. 1400 (W.D. Wis. 1990) (*LCO VII*), this Court held that hunting deer at night posed a "great danger . . . to public safety," and therefore, the defendants were allowed to enforce the State prohibition on shining of deer contained in § NR 13.30(1)(q) until the Tribes adopted regulations identical in scope and content to § NR 13.30(1)(q).

2. Shortly after the decision in *LCO VII*, the Tribes amended § 6.1 of the Model Off-Reservation Conservation Code (Model Code) to prohibit deer shining in a manner that was identical in scope and content to § NR 13.30(1)(q). This section of the Model Code is still in effect today, and precludes the State from enforcing § NR 13.30(1)(q) against Tribal members.

3. In 2001, the parties submitted a joint motion to this Court requesting modification of the final judgment entered in *Lac Courte Oreilles Band v. Wisconsin*, 775 F.Supp. 321 (W.D. Wis. 1991) (*LCO X*). *See* Exhibit 16. In doing so, the parties acknowledged that "new information, new data, or other changes in circumstances" may render some regulations previously approved by the Court "unnecessary for health, safety, or conservation purposes." *Id.* at ¶ 3. The parties asked that the Court allow modifications to the stipulations and revisions to the Tribes' Model Code to be made by the parties' mutual consent.

4. On June 13, 2001, this Court granted the parties' motion under Federal Rules of Civil Procedure 60(b)(6). Exhibit 15. Since that time, the parties have submitted two amendments to the Court that modify the final judgment in *LCO X*.

5. In the 2009 *Stipulation for Technical, Management, and Other Updates: First Amendment of Stipulations Incorporated into Final Judgment*, the parties agreed that the Executive Administrator of GLIFWC could, "without consultation with the State, issue a

Commission Order to provide tribal members more treaty harvest opportunities in line with opportunities provided under State law to non-members of the plaintiff Tribes." Exhibit 14 at § V(2)(a). This amendment procedure is referred to by the parties as the "technical amendment" process.

6. In the 2011 *Stipulation for Technical, Management, and Other Updates: Second Amendment of Stipulations Incorporated Into Final Judgment,* the parties agreed that the Executive Administrator of GLIFWC could, "after consultation with the State and upon agreement of the parties (where consent may not be unreasonably withheld), issue a Commission Order to provide tribal members more treaty harvest opportunities consistent with those available under state law to state harvesters." Exhibit 5 at § III(A)(2). This amendment process is referred to by the parties as the "other liberalization amendment" process.

7. In 2002, the State of Wisconsin first discovered that chronic wasting disease (CWD) had infected deer in the southern portion of the State. While CWD poses no threat to the human population, it may produce dramatic declines in the deer population if not checked. Currently, there are no available treatments or vaccines for CWD.

8. Beginning in 2002 and continuing until at least 2011, the Wisconsin Department of Natural Resources (Department) used sharpshooters to shoot deer in locations where CWD was thought to be present. These sharpshooters were authorized to and did shoot deer at night for at least ten years.

9. Wisconsin is not the only state to use nighttime sharpshooters to cull the local deer population. In recent years, nighttime shooting of deer has become commonplace around the country, including in urban and suburban settings, because it is a safe and effective way of lowering or eliminating the deer population in an area.

10. In 2012, the Wisconsin Legislature authorized a nighttime wolf hunt open to the general public that begins on November 26, 2012 and runs through February 28, 2013. 2011 Wis. Act 169, Exhibit 17. On July 2, 2012, the Wisconsin Natural Resource Board approved Board Order WM-09-12E, which establishes the rules governing this year's wolf hunt. These rules provide that the holder of a wolf permit may hunt at night if they: (1) use calling techniques or bait the site; (2) shoot from a stationary position; and (3) do not use dogs. Exhibit 24.

11. Wolves are substantially larger than coyotes. As a result, most persons shooting wolves in Wisconsin will or should use high caliber cartridges – including the same cartridges used for killing deer – when shooting wolves.

12. In response to these changes in State law, the Tribes initiated good faith consultation with the State in an attempt to gain the State's consent to nighttime deer hunting by Tribal members within the ceded territory. Consultation was initiated in the spring of 2012, and continued through mid-November 2012.

13. During consultation sessions, the State at first indicated that it had no objection to Tribal night hunting of deer. Later, the State changed its position, and requested that the Tribes delay implementation of any change until next year, because it would likely create negative publicity. Only at the eleventh hour did the State raise safety concerns with the Tribes' proposal. Those concerns are meritless and discriminatory, and the State's refusal to consent to the change in Tribal laws is therefore unreasonable.

14. On November 21, 2012, the Great Lakes Indian Fish and Wildlife Commission (GLIFWC) issued Commission Order No. 2012-05. Exhibit 25. This Order carves out an exception to the ban on nighttime hunting of deer. It permits Tribal members to obtain a permit

to shoot deer at night if they can satisfy certain stringent requirements, which include but are not limited to: (1) receiving marksmanship training and a marksmanship proficiency rating from their tribe, the U.S. armed forces, or a law enforcement agency; (2) completing an advanced hunter safety course; (3) creating a shooting plan that will be carried with them on any nighttime hunts and will be entered into a database that can be accessed by the Conservation Enforcement Division in the field; (4) designating their "safe zone of fire," which requires members to preselect their "point of kill" and to ensure that there is an adequate backstop to catch any errant bullets; and (5) shooting from a stationary position.

15. The requirements for nighttime hunting contained in Commission Order No. 2012-05 were initially modeled after the requirements for the State's own nighttime CWD eradication program, and as enacted, are even more stringent than the State rules.

16. The Commission's Order was validly issued pursuant to the "other liberalization amendment" procedures contained in the *Stipulation for Technical, Management and Other Updates: Second Amendment of the Stipulations Incorporated in the Final Judgment*, because the State's consent was unreasonably withheld.

17. Alternatively, this Court should grant the Tribes relief from the final judgment in *LCO X* under Federal Rules of Civil Procedure 60(b)(5), because the Tribes have demonstrated a "significant change in circumstances warrants revision of the decree," and that the proposed modification "is suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992).

18. This Court should issue a preliminary injunction restraining the defendants from enforcing Wis. Admin. Code § 13.30(1)(q) against members of the Tribes in the courts of the State of Wisconsin while these proceedings are pending.

19. After providing an opportunity for the parties to engage in limited discovery and after the holding of an evidentiary hearing, this Court should issue a permanent injunction restraining the defendants from enforcing Wis. Admin. Code § 13.30(1)(q) against members of the Tribes in the courts of the State of Wisconsin.

        Respectfully submitted this 27th day of November, 2012

        /s/ Colette Routel
        Associate Professor
        William Mitchell College of Law
        875 Summit Avenue
        Saint Paul, MN 55105
        (651) 290-6327
        colette.routel@wmitchell.edu
        Attorney for Lac du Flambeau Band

James H. Schlender, Jr.
Attorney for Lac Courte Oreilles Band of Lake Superior Chippewa Indians

Milt Rosenberg
Attorney for Red Cliff Band of Lake Superior Chippewa Indians

Wade Williams
Attorney for
Sokaogon Chippewa Community,
Mole Lake Band

Aaron Loomis
Attorney for St. Croix Chippewa Indians of Wisconsin

Erick Arnold
Attorney for Bad River Band of Lake Superior Chippewa Indians